## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

THOMAS BILLARD                                    CIVIL ACTION

VERSUS                                            NO.  12-2320

HOWARD PRINCE, WARDEN                             SECTION "S"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Thomas Billard, is incarcerated in the Elayn Hunt Correctional Center ("Hunt") in St. Gabriel, Louisiana.[2]  On August 10, 2000, Billard and a co-defendant, Sharon Harrell, were charged by bill of information in Jefferson Parish with two counts of armed robbery.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> On January 20, 1999, at approximately 2:30 a.m., Gregory Smith and David Chryssoverges had just finished a carpet cleaning job at a fast food restaurant on Veterans Boulevard.  Chryssoverges remained in the restaurant while Smith went outside to the van to empty a reservoir tank.  Smith noticed four people approaching from the direction of a nearby bar.  Two of these individuals, a black male and a white female, continued walking towards the van, while the other two stayed behind.
>
> The black male, subsequently identified as defendant, asked Smith if he could give them a ride to Tulane Avenue.  Smith told defendant he could not do so because he and Chryssoverges had another job to complete in Kenner, which was in the opposite direction.  Smith then sat in the driver's seat of the van after which defendant asked Smith for a light for his cigarette.  Smith pressed the van's cigarette lighter and handed the lighter to defendant.  As defendant leaned over to light the cigarette, Smith saw two guns in the defendant's waistband.  Thereafter, defendant told the girl, later identified as Sharon Harrell, to get in the van.  When Harrell entered the passenger's side of the van, defendant removed the two guns and held them at waist-level while standing inside the open doorway of the van's driver's side.
>
> At that point, Chryssoverges exited the restaurant and noticed a red haired woman sitting in the passenger seat of the van.  As Chryssoverges approached the van, he saw Smith in the driver's seat and the defendant standing next to Smith.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 15, Bill of Information, 8/10/00.  Harrell had been charged with the same two counts in a prior bill of information filed February 18, 2000.  St. Rec. Vol. 1 of 15, Original Bill of Information, 2/18/00.  That bill was amended to add Billard by the filing of the August 10, 2000 bill of information.  Id., see District Attorney's handwritten note.

Chryssoverges walked around to the passenger's side of the van and looked through the van at defendant.  When Chryssoverges saw that defendant was holding two guns, he immediately blurted out, "Man are you crazy? Put those guns away."  Chryssoverges said that the defendant "kind of smiled" at him, and Chryssoverges said that he felt frightened.  Smith informed Chryssoverges that the two people wanted to go to Tulane.  Chryssoverges agreed, but said that he needed to return to the restaurant to retrieve a clipboard, knowing that his reentry would trigger the alarm.

Chryssoverges reached the door, opened it and set off the alarm.  At this point, defendant ordered Smith to get out of the van.  Defendant stepped back, Smith jumped down from the driver's seat, and defendant climbed into the van.  Defendant then pointed one of the guns at Smith and asked if he had any money.  Smith threw a $5.00 bill into defendant's lap and backed away from the van.  Smith begged defendant not to shoot and then ran towards the restaurant.  Defendant sped away on Veterans Boulevard.  Shortly thereafter, the police responded to the alarm and Smith and Chryssoverges gave descriptions of the perpetrators to the police.  Chryssoverges testified that his cellular telephone, his gun, and his equipment to operate his business, were inside of his van when defendant took it.  The van was subsequently recovered in Jackson, Mississippi.

In March of 1999, the case detective showed Chryssoverges and Smith two sets of photographs.  One set contained photographs of defendant and some men, while the other set contained Harrell's photograph and some women.  Chryssoverges positively identified defendant and Harrell, but Smith was only able to positively identify Harrell from the photographs.  Smith explained that he could not make a positive identification of defendant because he purposefully did not look at the gunman.

Defendant was subsequently arrested and charged with two counts of armed robbery.

State v. Billard, 852 So.2d 1069, 1071-72 (La. App. 5th Cir. 2003); State Record Volume 14 of 15, Louisiana Fifth Circuit Court of Appeal Opinion, 03-KA-319, p. 3-4, July 29, 2003.

After severance of the defendants for trial, Billard was tried by a jury on November 6 and 7, 2001, and he was found guilty as charged on both counts of armed

robbery.[4]  The state trial court denied Billard's motion for a new trial at a hearing held

November 15, 2001.[5]

That same day, in a separate proceeding, the co-defendant, Harrell, entered a guilty

plea to an amended bill of information charging her with two counts of attempted armed

robbery.[6]  She was sentenced to two years and six months in prison on each count.[7]

Thereafter, on December 10, 2001, the state trial court sentenced Billard to serve

concurrent sentences of 50 years in prison as to each count.[8]  The State filed a multiple

bill as to count one to which Billard entered a guilty plea on January 28, 2002.[9]  The state

trial court accepted the plea and found that Billard was a second offender as to the first

---

[4]St. Rec. Vol. 3 of 15, Minute Entry, 5/31/01; Trial Minutes, 11/6/01; Trial Minutes, 11/7/01; Jury Verdict, 11/7/01; St. Rec. Vol. 10 of 15, Excerpt of Trial Transcript, 11/6/01; Trial Transcript, 11/7/01; St. Rec. Vol. 11 of 15, Trial Transcript (continued) 11/7/01; St. Rec. Vol. 2 of 15, Motion to Sever Parties for Trial, 4/24/01; Motion to Sever Parties, 5/3/01.

[5]St. Rec. Vol. 3 of 15, Motion for New Trial, 11/15/01; St. Rec. Vol. 11 of 15, Hearing Transcript, 11/15/01.

[6]St. Rec. Vol. 1 of 15, Bill of Information, 8/10/00 (handwritten amendment 11/15/01); St. Rec. Vol. 3 of 15, Plea Minutes (Harrell), 11/15/01.

[7]Id.

[8]St. Rec. Vol. 5 of 15, Sentencing Minutes, 12/10/01; St. Rec. Vol. 11 of 15, Sentencing Transcript, 12/10/01.

[9]St. Rec. Vol. 5 of 15, Multiple Bill, 12/10/01; St. Rec. Vol. 3 of 15, Multiple Bill Sentencing Minutes, 1/28/02; Waiver of Rights - Plea of Guilty Multiple Offender, 1/28/02; St. Rec. Vol. 11 of 15, Multiple Bill Hearing Transcript, 1/28/02.

armed robbery count.[10]  Billard was re-sentenced to serve 50 years on that count without benefit of probation or suspension of sentence and to run concurrently with his other sentence.  The court noted at the sentencing that Louisiana's multiple offender law allowed for parole eligibility and that Billard would retain that eligibility.[11]

Billard's convictions and sentences were affirmed on direct appeal by the Louisiana Fifth Circuit on July 29, 2003.[12]  The Louisiana Supreme Court denied Billard's subsequent writ application without reasons on February 6, 2004.[13]

Billard's conviction became final 90 days later, on May 6, 2004, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[10]St. Rec. Vol. 3 of 15, Multiple Bill Sentencing Minutes, 1/28/02; Waiver of Rights - Plea of Guilty Multiple Offender, 1/28/02; St. Rec. Vol. 11 of 15, Multiple Bill Hearing Transcript, 1/28/02.

[11]St. Rec. Vol. 11 of 15, Multiple Bill Hearing Transcript, p. 8, 1/28/02.

[12]State v. Billard, 852 So.2d at 1075; St. Rec. Vol. 14 of 15, 5th Cir. Opinion, 03-KA-319, p. 9, 7/29/03.

[13]State v. Billard, 865 So.2d 739 (La. 2004); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2003-KO-2437, 2/6/04; St. Rec. Vol. 14 of 15, La. S. Ct. Writ Application, 03-KO-2437, 9/2/03 (postal metered 8/18/03, dated 8/17/03); St. Rec. Vol. 3 of 15, La. S. Ct. Letter, 2003-KO-2437, 9/2/03 (showing postal meter of 8/18/03).

A.      State Court Post-Conviction Review

On October 21, 2004, Billard submitted an application for post-conviction relief in the state trial court asserting five grounds:[14] (1) The trial court and the district attorney allowed the illegal seizure of his property. (2) The trial court and the district attorney relied on a defective bill of information. (3) The trial court and the district attorney erred in denying a Batson[15] challenge. (4) The trial court and the district attorney used known perjured testimony and false evidence. (5) Petitioner's trial counsel was ineffective.

On November 2, 2004, the state trial court denied the application, finding that the illegal seizure and Batson claims were barred from review because they were not raised on direct appeal, the defective bill of information and perjured testimony claims were barred as repetitive of issues addressed on appeal, and the ineffective assistance of counsel claim was without merit.[16]  The Louisiana Fifth Circuit denied Billard's related writ application on December 10, 2004, finding no error in the trial court's ruling.[17]  The Louisiana Supreme Court denied his subsequent writ application on January 9, 2006.[18]

_____

[14]St. Rec. Vol. 4 of 15, Uniform Application for Post-Conviction Relief, 10/25/04.

[15]Batson v. Kentucky, 476 U.S. 79 (1986), prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of race.

[16]St. Rec. Vol. 13 of 15, Trial Court Order, 11/2/04.

[17]St. Rec. Vol. 13 of 14, 5th Cir. Order, 04-KH-1387, 12/10/04; 5th Cir. Writ Application, 04-KH-1387, 12/2/04 (postmarked 11/30/04).

[18]State ex rel. Billard v. State, 918 So.2d 1023 (La. 2006); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2005-KH-0286, 1/9/06; La. S. Ct. Writ Application, 05-KH-286, 2/1/05 (postmarked 12/29/04);

On July 17, 2006, Billard submitted another application for post-conviction relief in the state trial court asserting six grounds for relief:[19] (1) He was denied effective assistance of counsel during the habitual offender adjudication related to his parole eligibility. (2) His guilty plea to the multiple bill was invalid because of the misrepresentations about his parole eligibility. (3) The trial court and the district attorney erred in a Batson challenge violation. (4) The State used perjured testimony to obtain the conviction. (5) The second count in the bill of information was insufficient. (6) His personal property was illegally seized through an invalid search.  In the petition, Billard indicated that he wrote to the records department at Hunt, where he was housed, to obtain confirmation of his parole consideration date.  He claims that he was advised on June 23, 2006, that he was not eligible for parole consideration because he committed a violent crime after January 1, 1997, and was therefore ineligible under La. Rev. Stat. § 15:301.1.

The state trial court denied the application on August 7, 2006, as untimely filed under La. Code Crim. P. art. 930.8 and as raising repetitive claims.[20]  On September 1, 2006, the Louisiana Fifth Circuit denied Billard's related writ application and declined to consider his request for rehearing by order issued under a different case number on

---

St. Rec. Vol. 13 of 15, La. S. Ct. Letter, 2005-KH-286, 2/1/05 (showing postmark of 12/29/04).

[19]St. Rec. Vol. 7 of 15, First page of the Uniform Application for Post-Conviction Relief, 7/26/06; Memorandum in Support, dated 7/17/06; Cover Letter, 7/26/06 (dated 7/17/06).  The record does not contain a complete copy of the form application itself.

[20]St. Rec. Vol. 13 of 15, Trial Court Order, 8/7/06.

September 22, 2006.[21]  The Louisiana Supreme Court denied Billard's subsequent writ application on August 15, 2007, as untimely, citing La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995).[22]

In the meantime, on April 9, 2007, Billard submitted to the state trial court a motion seeking to correct his sentence to provide for parole eligibility.[23]  The state trial court denied the motion, finding that the sentencing court properly explained the habitual offender law and that the Louisiana Department of Corrections was also correct that Billard was ineligible for parole because of his violent offense.[24]  The Louisiana Fifth Circuit denied Billard's subsequent writ application on May 16, 2007, as did the Louisiana Supreme Court without stated reasons on March 14, 2008.[25]

---

[21]St. Rec. Vol. 13 of 15, 5th Cir. Order, 06-KH-614, 9/1/06; 5th Cir. Writ Application, 06-KH-614, 8/22/06 (postmarked 8/18/06, dated 8/17/06); 5th Cir. Order, 06-KH-687, 9/22/06; 5th Cir. Writ Application, 06-KH-687, 9/18/06 (postmarked 9/8/06, dated 9/7/06).

[22]State ex rel. Billard v. State, 961 So.2d 1151 (La. 2007); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2006-KH-2506, 8/15/07; La. S. Ct. Writ Application, 06-KH-2506, 10/18/06 (postal metered 10/2/06, dated 10/2/06).

[23]St. Rec. Vol. 8 of 15, Motion to Correct an Illegal Sentence, 1/6/09 (dated 1/5/09) (see page one of the motion and pages two and three of the motion, separated by inadvertent pages from another motion).

[24]St. Rec. Vol. 8 of 15, Trial Court Order, 4/20/07.

[25]State ex rel. Billard v. State, 977 So.2d 927 (La. 2008); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2007-KH-1162, 3/14/08; La. S. Ct. Writ Application, 07-KH-1162, 6/14/02 (postmarked 5/23/07, dated 5/22/07); St. Rec. Vol. 13 of 15, 5th Cir. Order, 07-KH-327, 5/16/07; 5th Cir. Writ Application, 07-KH-327, 5/15/07 (postmarked 5/9/07, dated 5/9/07).

Billard submitted a writ application to the Louisiana Supreme Court seeking reconsideration of his prior pro se writ applications filed in the Louisiana Fifth Circuit under the holding in State v. Cordero, 993 So.2d 203 (La. 2008).[26]  Per the Cordero procedures, this writ application was transferred to the Louisiana Fifth Circuit.[27]  On March 2, 2009, the Louisiana Fifth Circuit denied relief on Billard's Cordero review of his prior pro se writ applications.[28]  Billard thereafter submitted an application seeking review of that ruling in the Louisiana Supreme Court on March 9, 2009.[29]  The Louisiana Supreme Court denied the application without stated reasons on January 29, 2010.[30]

While those matters were pending, Billard submitted a second motion to the state trial court to correct an illegal sentence based on his parole ineligibility.[31]  The state trial court eventually appointed counsel for Billard and held a hearing on March 12, 2009 to

---

[26]St. Rec. Vol. 14 of 15, La. S. Ct. Writ Application, 08-KH-1846, 8/5/08 (postal metered 7/7/08). The Cordero court addressed the alleged procedural improprieties and summary dismissal without judicial review of pro se post-conviction writ applications filed in that court over a period of time.

[27]State ex rel. Billard v. State, 994 So.2d 42 (La. 2008); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2008-KH-1846, 10/10/08.  The Cordero court directed that writs with questionable review history be transferred to the Louisiana Fifth Circuit for reconsideration.

[28]St. Rec. Vol. 13 of 15, 5th Cir. Order, 08-WR-847, 3/2/09; 5th Cir. Writ Application, 08-WR-847, 10/18/08.

[29]St. Rec. Vol. 14 of 15, La. S. Ct. Writ Application, 09-KH-653, 3/23/09 (dated 3/9/09).

[30]State ex rel. Billard v. State, 25 So.3d 823 (La. 2010); St. Rec. Vol. 14 of 15, La. S. Ct. Order, 2009-KH-0653, 1/29/10.

[31]St. Rec. Vol. 8 of 15, Motion to Correct an Illegal Sentence, 1/6/09 (dated 1/5/09).

consider the motion.[32]  After considering the argument of counsel, the court denied the motion.[33]  Billard did not seek review of that ruling.

B.    Other Administrative Review

The record reflects that, in response to his inquiry, Billard was notified on June 23, 2006, by the Corrections HRDC Supervisor at Hunt that he was not eligible for parole.[34]  On June 27, 2006, Billard submitted an administrative grievance complaint to Hunt officials, EHCC-06-939, complaining that he was parole eligible under Louisiana law.  He asserted that the prison official's interpretation of the law was contrary to statutory and case law establishing that the habitual offender laws did not prohibit parole eligibility and that under La. Rev. Stat. § 15:574.4(A)(3) parole is allowed for those more than 45 years old who have served 20 years of their sentence.

On July 26, 2006, Unit Head Charles Haydel at Hunt responded, indicating that Billard's armed robbery/violent crime conviction prohibited parole eligibility under "Act 790," effective January 1, 1997.[35]  Billard appealed the denial of his grievance to the

---

[32]St. Rec. Vol. 8 of 15, Trial Court Order, 1/15/09; Minute Entry, 2/12/09; Hearing Minutes, 3/12/09.

[33]St. Rec. Vol. 8 of 15, Hearing Minutes, 3/12/09.

[34]St. Rec. Vol. 15 of 15, Hunt Inmate Informal Correspondence to Staff, 6/23/06.

[35]St. Rec. Vol. 15 of 15, Hunt First Step Response, 7/26/06.

Secretary of the Louisiana Department of Corrections ("DOC").  In her response dated February 23, 2007, Linda Ramsey reiterated the same law and denied Billard relief.[36]

On March 16, 2007, Billard filed suit seeking judicial review of this administrative decision in the 19th Judicial District Court for East Baton Rouge Parish.[37]  The court's commissioner issued a report on February 9, 2009, recommending that Billard's appeal be dismissed because he was ineligible for parole under La. Rev. Stat. § 15:574.4(B), which was applicable in 1999 when he committed the armed robberies.[38]  The state district court adopted the recommendation and issued its judgment on March 11, 2009.[39]

Billard timely appealed and the Louisiana First Circuit affirmed the ruling of the state district court on February 11, 2011 citing the same reasons.[40]  The court also noted that, at the time of the offenses, La. Rev. Stat. § 14:64 provided that persons convicted of armed robbery were not eligible for parole.  The court concluded that Section 14:64 prevailed over the allowance of parole eligibility under the habitual offender statute.

---

[36]St. Rec. Vol. 15 of 15, DOC Second Step Response, 2/23/07.

[37]The State failed to provide a copy of that court's record.  The filing date was obtained from the office of the clerk of that court.

[38]St. Rec. Vol. 15 of 15, Commissioner's Report, 19th JDC No. 553285, 2/9/09.

[39]St. Rec. Vol. 15 of 15, Judgment, 19th JDC No. 553285, 3/11/09.

[40]Billard v. Kling, 57 So.3d 609, 2011 WL 497175, at *1 (La. App. 1st Cir. Feb. 11, 2011) (Table, Text in Westlaw); St. Rec. Vol. 15 of 15, 1st Cir. Opinion, 2010-CA-0352, 2/11/11; Notice of Intent to Seek Writs, 19th JDC No. 553285, 3/31/09.

The Louisiana Supreme Court denied Billard's related writ application on March 2, 2012, without stated reasons.[41] The court also denied Billard's subsequent request for reconsideration on April 27, 2012.[42]

## II.   PRIOR FEDERAL HABEAS PETITION

Billard's first federal habeas corpus petition was filed by the clerk of this court on February 15, 2006.[43] Billard asserted five challenges to his underlying conviction: (1) illegal search and seizure; (2) defective bill of information; (3) Batson violations; (4) the State's use of known perjured testimony; and (5) ineffective assistance of trial counsel. The petition was dismissed as untimely under the AEDPA.[44] Both this court and the United States Fifth Circuit Court of Appeals denied issuance of a certificate of appealability.[45] The United States Supreme Court denied Billard's petition for writ of certiorari on November 26, 2007.[46]

---

[41]Billard v. Kling, 83 So.3d 1033 (La. 2012); St. Rec. Vol. 15 of 15, La. S. Ct. Order, 2011-CI-0406, 3/2/12; La. S. Ct. Writ Application, 11-CI-406, 2/28/11 (dated 2/25/11).

[42]Billard v. Kling, 86 So.3d 612 (La. 2012); St. Rec. Vol. 15 of 15, La. S. Ct. Order, 2011-CI-0406, 2011-CI-0406, 4/27/12; Request for Reconsideration, 11-CI-0406, 3/16/12 (dated 3/9/12).

[43]Billard v. Warden, Civ. Action No. 06-0816"S"(2).

[44]Civ. Action No. 06-0816"S"(2), Rec. Doc. Nos. 5, 7, 8.

[45]Id., Rec. Doc. Nos. 12, 16.

[46]Billard v. Cain, 552 U.S. 1045 (2007); Civ. Action No. 06-0816"S"(2), Rec. Doc. No. 18.

The State has <u>not</u> challenged Billard's instant petition as a prohibited second or successive petition.  As discussed in this report, the factual basis for the claims asserted in the instant petition was discovered by Billard on June 23, 2006, several months after the prior federal petition was filed and after my report and recommendation was issued recommending dismissal of the petition as time-barred.  Specifically, the instant petition involves Billard's eligibility for parole, an issue that first arose when Billard was notified of his ineligibility for parole by a Hunt official on that date. Because I find that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," Billard's petition is an exception to the prohibition against second or successive petitions under 28 U.S.C. § 2244(b)(2)(B)(i), and I will address the petition.

III.   <u>CURRENT FEDERAL HABEAS PETITION</u>

On May 15, 2012, the clerk of the United States District Court for the Middle District of Louisiana filed Billard's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[47] (1) The DOC has erroneously interpreted and applied La. Rev. Stat. § 15:574.4(A)(3) to make him ineligible for parole. (2) He is entitled to parole consideration because the sentencing judge stipulated that he was eligible for parole based on the statutory scheme at the time.  Construed broadly,

---

[47]Rec. Doc. No. 1.

13

Billard's second claim also contends that if he is ineligible for parole under these provisions, his guilty plea to the multiple bill was unknowing and invalid because it was made on the representation that he would remain parole eligible.[48]   The petition was transferred to this court on September 21, 2012.[49]

In response to this court's briefing order, the State filed an opposition to Billard's petition asserting that the petition is not timely filed, having been filed more than one year after finality of his conviction.[50]   Alternatively, the State argues that Billard's claim addresses a matter of state law and fails to present a federal issue cognizable under Section 2254.

Billard replied to the State's response, arguing that the State failed to recognize his exhaustion of the administrative remedy proceedings, which affects the timeliness of his petition.[51]   He also argues that he has asserted a claim that his guilty plea to the multiple bill was predicated on his parole eligibility and has been rendered unconstitutional based on the DOC refusal to allow him parole consideration.

---

[48]Rec. Doc. No. 1-1, p. 11.

[49]Rec. Doc. Nos. 6, 7.

[50]Rec. Doc. No. 19.

[51]Rec. Doc. No. 20.

IV.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") went into effect on April 24, 1996[52] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Billard's petition, which, for reasons discussed below, is deemed filed in this federal court on May 14, 2012.[53]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[52]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[53]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Billard's petition was filed by the clerk of the United States District Court for the Middle District of Louisiana on May 15, 2012, when it was received. Rec. Doc. No. 1. He later paid the filing fee in that court on June 7, 2012. Rec. Docket Entry, 6/7/12. Billard's signature on the petition was dated May 15, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See <u>Cousin v. Lensing</u>, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing <u>Spotville</u>, 149 F.3d at 374).

Based on the record, I find that Billard has exhausted both his state court post-conviction proceedings and the administrative review required by state law concerning his challenge to the DOC finding that he is parole ineligible and his related argument that his plea to the multiple bill has been rendered unconstitutional based on his parole ineligibility.

Although the State argues that Billard's petition is not timely filed, I find that errors in the State's timeliness calculation render it untrustworthy, and the time-bar defense must be rejected.  For example, the State failed to consider the alternative date of commencement of the limitations period from discovery of the factual predicate underlying Billard's claims.  The State also failed to consider the tolling allowed for Billard's required exhaustion of the Louisiana Corrections Administrative Remedy Procedure addressed below.

As to timeliness, the AEDPA requires a petitioner to bring his Section 2254 petition within one year of the latest of several possible events, including the date his conviction became final or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[54]  <u>Duncan</u>

---

[54]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

>      (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run <u>from</u> <u>the</u> <u>latest</u> <u>of</u>--
>
>      A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

v. Walker, 533 U.S. 167, 179-80 (2001).  The State addresses only timeliness as it relates

to the finality of Billard's conviction, which occurred on May 6, 2004.  However, Billard

contends, as he has throughout the state court proceedings, that he did not discover that

he was ineligible for parole until June 23, 2006, when he was advised of his ineligibility

by a Hunt official.

The State did not respond to Billard's assertion of this alternate trigger date.  The

State also does not refute that this date was the date on which Billard discovered his

ineligibility.  It does not assert that he should have discovered the information any sooner

with due diligence.  The record is devoid of any indication that Billard should have

known he was parole ineligible before June 2006 or that he should have inquired sooner,

based on the length of his sentence.  Therefore, I will consider June 23, 2006, not the

finality of his underlying conviction, to be the appropriate start date from which to

determine the timeliness of his federal petition based on the relevant factual predicate.

28 U.S.C. § 2244(d)(1)(D).

---

B.      the date on which the impediment to filing an application created by State action
         in violation of the Constitution or laws of the United States is removed, if the
         applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the
         Supreme Court, if the right has been newly recognized by the Supreme Court
         and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could
         have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this subsection (emphasis added).

Under a literal application of the statute, Billard had one year from discovery of his ineligibility, or until Monday, June 25, 2007,[55] to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, <u>unless</u> the one-year statute of limitations period was interrupted or otherwise tolled as recognized by law.[56]

The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.  <u>Flanagan</u>, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

---

[55]The last day was Saturday, June 23, 2007, leaving the final day to fall to the next business day.

[56]In light of my findings, it is not necessary to discuss equitable tolling.

18

[Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 & n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2)

purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

I find that Billard fully pursued both the typical state court post-conviction proceedings and the other required administrative review of his challenge to his parole ineligibility before he submitted his federal petition for filing in the Middle District. Post-conviction review under Louisiana law requires that an application for post-conviction relief first be filed in the state district court. La. Code Crim. P. art. 925. The petitioner may then seek supervisory review in the appellate court. La. Code Crim. P.

art. 930.6.   Louisiana law also provides for discretionary review in the Louisiana Supreme Court.  La. S. Ct. Rule X §5.  As a general rule, Billard's challenge to his parole ineligibility designation and the implementation of his sentence would not be cognizable on post-conviction review under La. Code Crim. P. art. 930.3, which prohibits post-conviction review of matters related to sentences and habitual offender proceedings. State ex rel. Brown v. State, 870 So.2d 976 (La. 2004).  Instead, Louisiana law requires that such a claim be administratively addressed and then reviewed by the state courts.

Louisiana law provides for an administrative review process under the Corrections Administrative Remedy Procedure ("CARP"), La. Rev. Stat. § 15:1171 et seq., and for subsequent supervisory review of that procedure by the state courts pursuant to La. Rev. Stat. §15:571.15.  Owens v. Stalder, 965 So.2d 886, 888 n.5 (La. App. 1st Cir. 2007). Under the CARP procedures, an inmate must utilize the administrative procedure established by the DOC, or any facility in which he his housed, to resolve any claims related to his confinement, including sentence computations. La. Rev. Stat. § 15:1171(B); Gibbs v. La.  Dep't of Public Safety and Corrections, No. 2011CA2376, 2012 WL 4335404, at *1 n.2 (La. App. 1st Cir. 2012).  Upon completion of the administrative process, an inmate may seek judicial review by filing suit in the appropriate state district court within thirty (30) days of receiving the DOC's decision.  La. Rev. Stat. § 15:1177; Gibbs, 2012 WL 4335404, at *1 n.2.  Pursuant to La. Rev. Stat. § 15:571.15, any such

21

suit against the DOC challenging the computation of an inmate's sentence or discharge date must be brought in the 19th Judicial District Court in East Baton Rouge Parish. Under La. Rev. Stat. § 15:1177A(10), the inmate may appeal the decisions of the district court to the "appropriate court of appeal," which would be the Louisiana First Circuit Court of Appeal. La. Rev. Stat. § 13:312(1). To complete the process, Louisiana law allows the inmate to seek supervisory review in the Louisiana Supreme Court. La. Code Civ. P. art. 2201; La. S. Ct. Rule X §5.

Thus, in considering the timeliness of the instant federal habeas petition, the court also must consider the pendency of Billard's other collateral review required under Louisiana's CARP procedures.

As outlined above, on July 26, 2006, Billard submitted a state court application for post-conviction relief in which he challenged, among other issues, his designation as parole ineligible under the DOC's alleged misinterpretation of Louisiana law and suggested that, if he were not eligible, his guilty plea was unknowingly made based on the representation that he was parole eligible. The application was denied by the state trial court on August 7, 2006, on procedural grounds as repetitive and successive. The Louisiana Fifth Circuit denied Billard's timely writ application and request for rehearing, finding no error in the trial court's ruling. In response to his timely writ application, the Louisiana Supreme Court denied relief under La. Code Crim. P. art. 930.8 and State ex

22

rel. Glover for seeking untimely post-conviction relief.  As argued by the State, Billard received no statutory tolling benefit for the pendency of these matters.  A state post-conviction application that is untimely under state law, does not provide the benefit of tolling under Section 2244(d)(2).  Pace, 544 U.S. at 414; Wardlaw v. Cain, 541 F.3d 275, 278-79 (5th Cir. 2008).

However, while those matters were proceeding through the state courts, Billard also pursued review of his claims through the administrative process, which was resolved after consideration of the merits of his claims (as opposed to mere procedural grounds).  As outlined above, three days after being advised that he was parole ineligible, Billard submitted an administrative grievance to Hunt officials on June 27, 2006, addressing the failure to recognize his parole eligibility based on the sentence imposed by the state trial court and Louisiana's habitual offender laws.  The grievance was denied at the first step on July 26, 2006.  A period of 186 days passed until January 29, 2007, when Billard submitted his second step appeal to the secretary of DOC.  The appeal was rejected on February 23, 2007.

Billard timely filed suit in the 19th Judicial District Court on March 16, 2007.  On March 11, 2009, the suit was dismissed with prejudice as meritless.  He timely filed a notice of appeal on March 31, 2009.  The Louisiana First Circuit affirmed the state district court's ruling on February 11, 2011, finding his arguments without merit.

Billard's timely filed writ application to the Louisiana Supreme Court, submitted on February 25, 2011, was denied without reasons on March 2, 2012. The court also denied his request for rehearing on April 27, 2012.

By that time, Billard had allowed only 189 days of the one year AEDPA statute of limitations period to lapse. Only seventeen (17) days later, on May 14, 2012, Billard submitted the instant federal petition for filing. I find that Billard's federal petition is timely filed, and the State's limitation defense must be rejected. For these reasons, I will address Billard's claims.

## V.   STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

VI.   <u>PAROLE ELIGIBILITY UNDER LA. REV. STAT. § 15:574.4(A)(3) (CLAIM NOS. 1 AND 2)</u>

The main focus of Billard's claims is his assertion that the DOC and the state courts have misinterpreted his sentence and Louisiana law under which he should be deemed eligible for parole consideration.  He argues that he is eligible for parole because his multiple offender sentence did not prohibit the benefit of parole.  In addition, under La. Rev. Stat. § 15:574.4(A)(3), known as the "old timers parole" provision, he is eligible for parole after turning age 45 and completing 20 years of his sentence.

Billard asserted these same arguments in the state courts on post-conviction review and through review under the CARP.  At each level of the CARP procedure, he was instructed by the courts and DOC, that although parole was not restricted under Louisiana's habitual offender laws, he was not eligible for parole under other provisions applicable to armed robbery as a violent crime.  Specifically, La. Rev. Stat. § 15:574.4(B)

prohibits parole for those convicted of armed robbery and other violent crimes.  In addressing his claim, the Louisiana courts held that the legislative intent underlying Section 15:574.4(B) has always been to prohibit "old timers parole" to those convicted of armed robbery, and that this specific prohibition prevails over the general provisions found in Section 15:574.4(A)(3) when considered under the rules of statutory interpretation in Louisiana.[57]

Billard's claims were and remain Louisiana state law claims.  Federal law is well settled that claims of error in the application of state law do not assert a claim cognizable in federal habeas proceedings.  Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)); Engle v. Isaac, 456 U.S. 107, 119 ("Insofar as respondents simply challenge ... [the application of state] law, they allege no deprivation of federal rights and may not obtain habeas relief." (emphasis added)); Young v. Dretke, 356 F.3d 616, 628 (5th Cir. 2004).  In the course of reviewing state criminal proceedings, a federal court does "not sit as a super state supreme court to review error under state law." Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007); Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983).  Furthermore, a state's failure to follow its own sentencing

---

[57]See Billard v. Kling, 2011 WL 497175, at *5; St. Rec. Vol. 15 of 15, 1st Cir. Opinion, 2010-CA-0352, 2/11/11.

procedures is not reviewable by a federal habeas corpus court.  Joseph v. Butler, 838 F.2d 786, 789 n.2 (5th Cir. 1988); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987).

Billard's claims that DOC officials and the state courts have misinterpreted and misapplied the Louisiana parole provisions to his sentence are entirely state law issues that do not warrant federal habeas corpus relief.  The issues presented under state law are not cognizable and must be denied.

Though not raised as a separate claim per se, when Billard's pro se arguments are construed broadly,[58] he also claims that the failure to recognize his parole eligibility rendered his guilty plea to the multiple bill unconstitutional because it was entered based on the representation that he was parole eligible under Louisiana's habitual offender laws.[59]  Billard urges that his entitlement to parole arises not only from his multiple offender sentence, but also under the "old timers parole" provision in La. Rev. Stat. §

---

[58]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

[59]Rec. Doc. No. 1-1, p. 11.  I note that, as outlined previously, when Billard raised this claim, that his plea was rendered unknowing and infirm, on post-conviction review in 2006, the state trial and appellate courts denied relief on procedural grounds that his application was repetitive and successive.  The Louisiana Supreme Court ultimately denied relief finding his application for post-conviction relief to be untimely under La. Code Crim. P. art. 930.8 and State ex rel. Glover.  The State did not raise the defense of procedural bar to this claim having failed to acknowledge that Billard included the argument challenging the plea itself.  I also note that Billard asserted the argument in his state court review of the administrative process, although the state courts did not specifically address the issue in those proceedings.  Because the arguments was raised in the proceedings that were considered on the merits, out of an abundance of caution, I will address it here.

15:574.4(A), which allows offenders to become parole eligible after reaching age 45 and serving 20 years of their sentence, if that is not otherwise contrary to another provision of Louisiana law.  These provisions were not discussed at Billard's multiple offender plea and sentencing.   Nevertheless, as determined by the state courts, Billard was not otherwise eligible for parole because La. Rev. Stat. § 15:574.4(B) precluded eligibility to those convicted of armed robbery.

Federal habeas review hinges upon whether a convicted state prisoner has presented a violated of his constitutional rights.   Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).  The Fourteenth Amendment provides protections for deprivations of one's life, liberty, or property without sufficient process where either the Constitution or state law creates a protected liberty interest.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  Billard has not established a violation of a protected liberty interest arising from his guilty plea to the multiple bill or his status as parole ineligible.

As a general rule, convicted state defendants do not have a federally guaranteed constitutional right to conditional release before the expiration of their valid sentences.

29

Greenholtz v. Inmates of the Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979).

Louisiana state discretionary laws do not create a protected liberty interest in obtaining

parole.  The United States Fifth Circuit has previously determined that the Louisiana

parole statutes do not give rise to a constitutionally protected liberty interest in parole

release and, thus, Louisiana prisoners may not challenge parole procedures under the Due

Process Clause.  Stevenson v. La. Board of Parole, 265 F.3d 1060, 2001 WL 872887, at

*1-*2 (5th Cir. July 11, 2001) (Table, Text in Westlaw).  Because neither Louisiana nor

federal law creates a liberty interest in parole that is protected by the Due Process Clause,

Billard can not challenge the parole procedures on habeas review in this court.  See Id.,

at *2; Sinclair v. Ward, 205 F.3d 1338, 1999 WL 1338408, at *1 (5th Cir. Dec. 27, 1999)

(Louisiana does not create a protected liberty interest in parole, and convicted inmates

"are not entitled to challenge the parole procedures employed under the Due Process

Clause."); Hughes v. Owens, 320 F. App'x 271 (5th Cir. 2009) (discussing Texas parole).

Even if Billard's arguments are construed as a more direct challenge to the

propriety of his guilty plea to the multiple bill, he fares no better.  To pass constitutional

muster, "[i]t is beyond dispute that a guilty plea must be both knowing and voluntary."

Parke v. Raley, 506 U.S. 20, 28 (1992).  When a habeas petitioner challenges the validity

of his guilty plea, he carries the burden of proving that his plea was not in fact knowing

and voluntary.  Hines v. Louisiana, 102 F. Supp.2d 690, 694 (E.D. La. 2000).  A plea is

30

"knowing" where the defendant is aware of the direct consequences of his plea, and a plea is "voluntary" when it is not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000).

Thus, for a plea to be considered knowing, "the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" Hernandez, 234 F.3d at 255 (quoting Boykin v. Alabama, 395 U.S. 238, 244 (1969)). State sentence enhancement procedures, such as multiple offender proceedings, are not determinative of guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. Buckley v. Butler, 825 F.2d 895, 902-03 (5th Cir. 1987). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." United States v. Rivera, 898 F.2d 442, 447 (5th Cir.1990); Ables v. Scott, 73 F.3d 591, 592 n.2 (5th Cir. 1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir.), cert. denied, 474 U.S. 838 (1985); Hernandez, 234 F.3d at 256-57 (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

In this case, the state court record and pleadings establish that Billard knew and understood the length of the sentence he faced as a multiple offender.  The record reflects that Billard was informed at his first sentencing that he faced a range of no less than 10 years and no more than 99 years in prison on each count of armed robbery, <u>without</u> the benefit of parole, probation or suspension of sentence.[60]  The state trial court sentenced him to serve concurrent sentences of 50 years in prison on each count.  After pleading guilty to the multiple offender bill as to count one, the state trial court informed Billard that he was facing a sentence of no less than 49½ years in prison and no more than 198 years at hard labor, <u>without</u> benefit of probation or suspension of sentence.[61]  The state trial court acknowledged that the applicable habitual offender provision at the time still allowed for parole eligibility.  Nevertheless, the court re-sentenced Billard as a multiple offender to serve the same 50 years in prison to run concurrently with any other sentence and to be served <u>without</u> benefit of probation or suspension of sentence.[62]  There is no question that Billard was made aware of and understood the minimum and maximum sentencing exposure before his plea to the multiple bill was accepted by the state trial court.

---

[60]St. Rec. Vol. 11 of 15, Sentencing Transcript, p. 9, 12/10/01.

[61]St. Rec. Vol. 11 of 15, Multiple Bill Hearing Transcript, p. 7, 1/28/02.

[62]<u>Id</u>., p. 11.

This necessarily means that Billard also understood that he might be required to serve the full term of his sentences, since even prisoners who are in fact eligible for parole may not be granted release and instead may be required to serve their full sentence.  On that point, the Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." Hill v. Lockhart, 474 U.S. 52, 56 (1985); Rogers v. Whitley, 8 F.3d 22, 1993 WL 456334, at *1 (5th Cir. Oct. 28, 1993) (Table, Text in Westlaw).  With regard to state sentencing schemes, "[t]he Due Process Clause does not . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." Parke, 506 U.S. at 32 (quoting Medina v. California, 505 U.S. 437, 451 (1992)).  As addressed briefly above, the United States Supreme Court has recognized that the states have no duty to establish a parole system and that there is no constitutional right to be released on parole before the expiration of a valid sentence.  See Board of Pardons v. Allen, 482 U.S. 369, 378 n.10 (1987) (explaining that "statutes or regulations that provide that a prole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); Greenholtz, 442 U.S. at 11 (holding that when a state parole law "provides no more than a mere hope that the benefit will be obtained ... is not protected by due process").

The United States Fifth Circuit has held that "[t]he United States Constitution does not require the State to furnish a defendant with information about parole eligibility in

order for the defendant's plea of guilty to be voluntary. . . . A defendant's mere expectation about the commutation and parole process is simply no ground for habeas corpus relief." James v. Cain, 56 F.3d 662, 666-67 (5th Cir. 1995).  It has long been the standard in this circuit that "[i]f a defendant's subjective belief was not based on any promises made by the defense attorney, the prosecutor, or the court, the law of this Circuit holds that the defendant's subjective belief alone is not sufficient to invalidate a guilty plea." Spinelli v. Collins, 992 F.2d 559, 561 (quotation marks and ellipsis omitted).

What may be problematic in this case is that when Billard was sentenced as a multiple offender, the trial court orally stated that there was no restriction on the benefit of parole. As noted above, a plea must be "voluntary" and not induced by any misrepresentation or unfulfilled promises.  Hernandez, 234 F.3d at 255; McKenzie v. Wainwright, 632 F.2d 649, 651 (5th Cir. 1980) ("[W]hen a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea."). Billard has not specifically claimed that his plea was induced by the court's statements that he was parole eligible as a multiple offender.  At the time, in addition to his

34

statements of understanding at the hearing, Billard also signed a waiver of rights form in which he confirmed that he was not promised anything or induced to enter the plea.[63]

Nevertheless, even if the state trial court's statements at the sentencing could be strained in such a way as to be considered some sort of promise made to Billard, the breaking of a promise does not necessarily entitle a prisoner to relief from his plea.  A promise qualifies as "significant" to the legality of a guilty plea only if the accused likely would not have pleaded guilty but for the promise.  See United States v. Birdwell, 887 F.2d 643, 645 (5th Cir. 1989) ("[I]f a prisoner's guilty plea is based 'in any significant degree' on a prosecutor's promise which reasonably may be said to be part of the consideration for the agreement, that promise must be fulfilled . . . [i]f . . . the state offer was a significant factor in inducing [the defendant] to plead guilty, to the extent that he likely would not otherwise have done so, his guilty plea is tainted.").  There is no reasonable basis in this record to conclude that Billard's plea to the multiple offender bill rested in any significant degree on the understanding that he would be eligible for parole.

The record contains no evidence that Billard entered his plea based on an agreement with the State or the court or where parole eligibility was a negotiated term of any plea agreement.  Billard has not alleged that it was.  The record also does not establish an intentional misreading of the law designed to induce his plea.  The state trial court accurately reported the sentencing range to Billard based on the habitual offender

---

[63]St. Rec. Vol. 3 of 15, Waiver of Rights Plea of Guilty Multiple Offender, 1/28/02.

law relied upon at the hearing.  Billard does not contend that he would not have entered the plea to the multiple bill and would have insisted on a full hearing had he known that he was ineligible for parole.

Even if Billard were to make such an assertion, the record demonstrates that he was not prejudiced by his plea and he instead gained great benefit from the sentence he received.  His 50-year concurrent prison sentence as a multiple offender was no longer in time than the original 50-year prison sentence he received on count one before the multiple bill was filed.  In addition, Billard is also serving the concurrent sentence on the second count of armed robbery for which he received a 50-year prison sentence <u>without</u> benefit of <u>parole</u>, probation or suspension of sentence under La. Rev. Stat. § 14:64. Furthermore, as noted above, even the prospect of parole eligibility was no guarantee that Billard would attain an early release instead of serving out the full term of his multiple offender sentence.

For the foregoing reasons, Billard has failed to present a cognizable federal habeas claim based on his challenge to the DOC's and the Louisiana courts' interpretation and application of Louisiana law.  Alternatively, Billard has failed to present any basis for this court to grant relief under federal due process considerations. He has failed to establish that his plea was not made knowingly and voluntarily where the record demonstrates that he understood the maximum prison sentence he faced as a multiple offender and the record contains no evidence that he was unduly induced to enter the

36

plea.  To this extent, the state court's denial of relief was not contrary to federal law. Billard's petition must be denied and dismissed with prejudice.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Thomas Billard's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[64]

New Orleans, Louisiana, this _____16th_____ day of May, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[64]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.